prosecute an action by injunction or otherwise against the Manhattan Railway Company to recover damages to the leasehold interest by reason of the erection and maintenance of a railway structure of the defendant; and it was agreed that the plaintiff was to receive one-fourth of the amount recovered for his services. The plaintiff thereupon brought an action against the company in the name of the defendant, in which injunctive relief and past damages were prayed for. Pending the action, and after considerable services had been performed therein, the defendant, without any notice to the plaintiff, disposed of his estate in the lands, and, as a consequence, the right to injunctive relief was destroyed. Pappenheim's Case, 128 N. Y. 436, 28 N. E. 518; Kernochan's Case, 128 N. Y. 559, 29 N. E. 65; Foote v. Railroad Co., 58 Hun, 478, 12 N. Y. Supp. 516; Filson v. Crawford (Sup.) 5 N. Y. Supp. 882. In the transfer made by the defendant no reservation was made of the existing right of action, so that the action brought in the defendant's name against the railroad company fell directly within these cases.

On the trial the plaintiff's counsel requested the trial judge to charge that the equitable cause of action against the railroad company failed when the defendant sold the property involved. The court declined so to charge, and the plaintiff's counsel excepted. Under the rulings made in the cases cited, this was error, which was not cured by anything that afterwards transpired. It is settled law that where a party prevents performance of a contract he is liable for damages legitimately flowing from the breach, and these, in this case, embraced the services which the plaintiff had rendered up to the time he was notified of the fact that the defendant had transferred his property, and that the action commenced had in consequence abated. True, the defendant did not, by the act of transfer, lose his claim for past damages; but the contract did not confine the plaintiff to that remedy alone, for it expressly provides for proceedings by injunction. Having commenced the action for injunctive relief, and the defendant, by his acts, having destroyed that remedy, he could not, without compensating the plaintiff for what he had done, compel him to bring a new action for past damages alone. That was not the agreement. And in determining the question of the breach the status of the parties at the time the contract was made fixes their rights and liabilities. For this reason the judgment must be reversed, and a new trial ordered, with costs to appellant to abide the event.

---

(8 Misc. Rep. 506.)

### WALDHEIM v. JOHN HANCOCK MUT. LIFE INS. CO.

(City Court of New York, General Term.    May 18, 1894.)

INSURANCE FOR BENEFIT OF WIFE—DEATH OF WIFE BEFORE HUSBAND.
   Where life insurance is procured by a husband, payable to his wife, her name, only, being mentioned in the policy, and she dies before the husband, the proceeds do not go to her personal representatives.

Appeal from trial term.

Action by Albert Waldheim, as administrator, against the John. Hancock Mutual Life Insurance Company. There was a judgment in favor of plaintiff, and defendant appeals. Reversed.

Argued before EHRLICH, C. J., and VAN WYCK and McCAR- THY, JJ.

Langbein Bros. & Langbein, for appellant.
Moses Weinman, for respondent.

McCARTHY, J. This is an appeal from a judgment in favor of plaintiff, entered upon a direction to the jury to find a verdict for the plaintiff for $400.19. The defendant, in the years 1884 and 1885, issued two policies, both on the life of one Christian Wurster, on his application (he paying the premiums), for the benefit of his wife, Marianna Wurster,—not to her, or her administrator, executors, assigns, legal representatives, etc., but payable only to Marianna Wurster, her name being the only one mentioned in the policy. The policies were delivered to and held by him until his death. The beneficiary, Maria Wurster, died intestate about January 1, 1890, before the insured, Christian Wurster, who died about April 30, 1890, four months after the death of the beneficiary (the wife), retaining possession of the policies up to the time of his death; the plaintiff's intestate never having had possession of them, he (Wurst- er) having paid the premiums up to the time of and after his wife's death. There was no issue of the marriage between plaintiff's intestate and the insured, and plaintiff is a son of the intestate by a former marriage, and no relative of the deceased. The neces- sary and ordinary allegations of the appointment of administration were alleged. To this state of facts the defendant demurred, as not alleging facts sufficient to constitute a cause of action, which was sustained at a special term of this court, but reversed at a general term; Chief Justice EHRLICH writing the opinion, which was filed March 10, 1891, (13 N. Y. Supp. 577), and order and judg- ment of reversal entered March 16, 1891, the general term holding that, upon the face of the complaint, no action appearing showing an intent of deceased to have the policy go elsewhere than to the personal representatives of the wife, the action was properly brought by them. Adopting the decision of the general term, the defendant thereupon paid $132 costs, and answered over, denying that any policy had ever been issued to the plaintiff's intestate, "Marie" Wurster, and alleging an assignment of the moneys under the policy to William Schweikert after the death of Maria Wurster, the wife, and also a last will and testament by Christian Wurster, the insured, specifically bequeathing the insurance money to William Schweikert, and that the moneys had been paid to the executor under the will. On the trial the defendant attempted to introduce evidence to meet the requirements of the general term opinion, and carry out the idea of, and acts of, Christian Wurster, which would have showed, not only an intention to have this insurance money go contrary to the implied intention of the law (i. e. to the personal representa- tives of the wife), but did actually convey, transfer, assign, and

bequeath this insurance money to William Schweikert, a person other than a representative of the wife, viz. a stepbrother of the deceased insured. The justice directed a verdict, against objection and exception of the defendant, and refused defendant's request to go to the jury on the facts as to the intention of the insured, and also on the question as to who should have these insurance moneys.

This is not a case where it is provided that, in case of the death of the wife before the insured, it shall go to the children or her representatives, nor is it the case of the wife insuring the life of her husband, for her sole use and benefit, and thus, in my judgment, it is not affected by statute law. The intention of the insured, when he took out this policy, was to make a provision for his wife, only, and no one else, in case he should die before her. In Baker v. Insurance Co., 43 N. Y. 286, Allen, J., says:

"The insurance was effected by the husband for the benefit of his wife, and as a provision for her in case of his death. He was the party contracting with the defendants, and the consideration for the agreement to insure proceeded from him, not from the wife. The statutes of this state authorize a married woman to insure the life of her husband for her own benefit, and declare that the insurance shall be payable to her free from the claims of the representatives and creditors of her husband; but the exemption is restricted to policies upon which the annual premium shall not exceed $300. Laws 1840, c. 80; Laws 1858, c. 187. But the plaintiff had an interest in the life of her husband, and an insurance procured by him for her benefit is good at common law. The policy would not be void as a gaming policy. This policy does not purport to have been effected or procured by the wife, or at her instance. The deceased had an insurable interest in his own life, and could lawfully insure for his own benefit, or in favor of any one having an interest in his life, as wife, child, or creditor, and could secure the insurance to the party intended to be benefited, either by taking a policy naming such intended beneficiary, or by taking a policy payable to himself or his representatives, and transferring it."

In Olmstead v. Keyes, 85 N. Y. 598, Earl, J., says:

"This policy was taken out by Lester for the benefit of his wife. It was an insurance on his own life for her benefit. While one cannot insure a life in which he has no interest, every person can insure his own life for any sum upon which he can agree with an insurance company. A life insurance is not, like fire insurance, a contract of indemnity, but a mere contract to pay a certain sum of money on the death of a person, in consideration of the due payment of certain annuity for his life. Dalby v. Assurance Co., 28 Eng. Law & Eq. 312; Rawls v. Insurance Co., 36 Barb. 357, 27 N. Y. 282; Insurance Co. v. Bailey, 13 Wall. 616. Like every other contract to pay money, such a policy is a chose in action, with all the ordinary incidents of every other chose in action. It is abundantly settled in this state that one who takes an insurance upon his own life may make the policy payable to any person whom he may name in the policy."

And again, at page 602, he says:

"All the choses of the wife, not reduced to possession during the joint lives, by the common law, passed to the husband on her death,—all, without any exception,—and there is no authority to the contrary; and this is true whether such choses are then payable, or are mere reversionary or contingent interests payable at a future day, or mere possibilities. He may then release them, or take payment of them without administration, if he can get payment. If administration is needed to reduce the choses to possession, he is entitled to it, and if there are no debts the administration is solely for his benefit. If, after his wife's death, the husband does not release, assign, or reduce to posses-

sion her choses in action, during his lifetime, then after his death his personal representatives are entitled to administration upon them for the benefit of his estate, as part of his assets."

The wife's interest in this policy was a chose in action. At her death it passed to her husband. He had a right then to assign, transfer, or will it as any other chose in action; and, where he failed to administer on the same, the obligation of the insured would be enforceable by the personal representatives of the husband. See Walsh v. Insurance Co., 133 N. Y. 419, 31 N. E. 228. In all the cases where it has been held that it went to the personal representatives of the wife, as in Whitehead v. Insurance Co., 102 N. Y. 143, 6 N. E. 267, and others, the contract was made with the insurer by the wife on the life of the insured, for her sole use and benefit, or the insured simply acted as her agent, and in almost each case the beneficiary and substitute are mentioned. All these cases and distinctions are clearly and fully discussed in Walsh, v. Insurance Co., supra. That is not this case.

In determining the question on the former appeal, which was on a demurrer to the complaint, the court was only passing on the sufficiency of the pleading, and did not have before it the contract or policy of insurance, or other evidence presented on the trial, and which the plaintiff, if he succeeds, must have before the court, as well as his complaint. The one paves the way. The other is the substance and material upon which the structure must stand or fall. The evidence and facts not being alike, there is no conflict with the former decision. For these reasons we think the trial judge erred in directing a verdict for the plaintiff; and judgment should be reversed, and new trial granted, with costs to abide the event. All concur.