ALBERT BORSZEWSKI, Plaintiff, *v.* STANLEY BUKOWSKI, Also Known as STANLEY WILSON, and ANNA BUKOWSKI, His Wife, Also Known as ANNA WILSON, Defendants.

Supreme Court, Erie County, December, 1932.

*Nelson Barrett* [*Edward C. Sabolewski, Associate Counsel*], for the plaintiff.

*Paul V. Sheehan,* for the defendants.

CHARLES B. WHEELER, Official Referee. For convenience in this opinion the defendant Stanley Bukowski will be referred to under the name of Stanley Wilson.

The Prudential Insurance Company of America issued four policies, in each of which the plaintiff, Albert Borszewski, is designated as the "insured."

The first is dated September 8, 1919; the second, October 13, 1924; the third, October 20, 1924, and the fourth, November 8, 1926. On the third of these policies the defendant Stanley Wilson is designated as the "beneficiary." No beneficiary is named in the other three, but such policies provide that the insurance company "*immediately upon receipt of due proof of the death of the insured during the continuance of this policy will pay* * * * *the amount of insurance herein specified* to the executors or administrators of the insured, unless payment be made under the provisions of the next succeeding paragraph."

The next succeeding paragraph is designated as the "*Facility of Payment*" clause and reads as follows: "It is understood and

agreed that the said Company may make any payment or grant any non-forfeiture provision provided for in this Policy to any relative by blood or connection by marriage of the Insured, or to any person appearing to said Company to be equitably entitled to the same by reason of having incurred expense on behalf of the Insured, for his or her burial, or, if the Insured be more than fifteen years of age at the date of this Policy, for any other purpose, and the production by the Company of a receipt signed by any or either of said persons or of other sufficient proof of such payment or grant of such provision to any or either of them shall be conclusive evidence that such payment or provision has been made or granted to the person or persons entitled thereto, and that all claims under this Policy have been fully satisfied."

On the " third " policy above referred to, wherein Stanley Wilson is named as " beneficiary," the agreement of the insurance company is to pay " to the Beneficiary named " certain sums. In this respect this last policy differs from the other three. All four policies contain a special provision for the loss of eyesight or limbs by the insured. It reads as follows: " If the Insured while this Policy is in full force and effect and while there is no default in the payment of premium shall lose by severance both hands or both feet or one hand and one foot or lose permanently the sight of both eyes, total and permanent disability shall be deemed to exist and as a special disability benefit an amount equal to one-half of the amount of insurance shall be paid immediately upon receipt by the Company of due proof of such loss, and thereafter no further premiums shall be required and the Policy shall be indorsed as fully paid up for the amount of insurance as specified in the Schedule above."

In the policy wherein Stanley Wilson is named as " beneficiary " it is declared the payment to be made for the loss of eyesight or limbs shall be deemed a special disability benefit to be paid the " insured."

It is to be noted, therefore, that the " insured " and not the " beneficiary " under the provisions of this policy is to be paid the benefit for the loss of eyesight or limb, so that on all four of the policies the plaintiff in this action is designated the beneficiary for loss of eyesight.

The time came when the plaintiff, Albert Borszewski, became totally blind, and was entitled to the benefits given by the policies for loss of eyesight. Claim was made on the insurance company, which recognized its liability. By arrangement the plaintiff was taken to the house of the defendant Stanley Wilson, where he met the agent or agents of the insurance company, who brought with

them three checks of the company drawn to the order of the plaintiff aggregating in amount the sum of $1,332.42. The plaintiff, being blind and unable to write his name, was asked to make his mark on each of the checks, which he did, his hand being guided. On the back of each check was this indorsement: " This check is in full payment of claim under policy or policies mentioned thereon, and the payee accepts it as such by indorsements below. No other receipt required."

He so indorsed by making his mark, and below the plaintiff's name the defendants Stanley Wilson and his wife, Anna Wilson, signed their names as witnesses, and not as payees. The defendant Stanley Wilson took the checks and deposited them to his own personal account in the M. & T. Trust Company and has paid to the plaintiff nothing whatever on account of the money so received from the insurance company. Hence this lawsuit, in which the plaintiff alleges the defendants unlawfully misappropriated the money received.

The defendants deny any misappropriation and claim the policies and their proceeds belong to the defendant Stanley Wilson by reason of their having taken out the policies and having paid the premiums thereon, and that the plaintiff gave him the proceeds.

The referee will have occasion to discuss later on in this opinion this claim and how far it is supported by the evidence in the case. However, for the present it is sufficient to refer to certain legal questions presented.

No one but the plaintiff in this action had any legal claim to the moneys paid by the insurance company in settlement of the plaintiff's disabilities by reason of his loss of eyesight. This contract was to pay him and not another. No one but the plaintiff had any right of action upon the policies to recover the benefit given by the policies. The insurance company recognized this by drawing the checks given in settlement to the order of the plaintiff. It must be presumed that the checks given were in strict compliance with the claim made upon which the settlement was had and this precludes any inference that the defendant Stanley Wilson was asserting claims to benefits paid.

Certainly it is plain that the insurance company did not avail itself of the provisions of the " Facility of Payment " clause of the policies, for its payments were made by checks direct to the plaintiff.

Even had payment been made to Stanley Wilson, such a payment to him would not have made him the absolute owner of the moneys paid. This proposition seems to be well established by the decisions in *Matter of Shanley* (95 Misc. 427); *Matter of Reilly*

(111 id. 66); *Wachtel* v. *Harrison* (84 id. 76); *Ruoff* v. *John Hancock Mutual Life Ins. Co.* (86 App. Div. 447); *Wokal* v. *Belsky* (53 id. 167).

While payment, if made, under the "Facility of Payment" clause made in good faith would operate to discharge the insurance company from liability under the policies, nevertheless, the party receiving the money takes and holds it in trust for the one legally entitled to it. The ownership of the money is to be determined by the courts in cases of dispute. (31 C. J. 972.)

This is equitable and just. We can suppose cases where any other rule would work rank injustice. Suppose some member of a family of the insured saw fit to advance some premium payments for the insured's benefit, and the insurance company under the facility of payment clause elected to pay the benefit to one so doing, it would be tantamount to a fraud for the one getting the money to withhold it as against the insured for whose real benefit the policies were written.

In the instant case the referee needs but call attention to the testimony of Joseph Chudzieki, a witness called for the defendants and who was one representing the insurance company at the time the checks were turned over, when he testified on that occasion in the presence of the defendant Stanley Wilson that he congratulated the plaintiff on being so fortunate as to have these insurance moneys coming to him in his pitiful condition, showing the insurance agents recognized the money belonged to the plaintiff and that Stanley Wilson acquiesced in that statement without protest.

The defendant Stanley Wilson testified that he himself took out the policies in question, paid all the premiums on them and all the time since their issue has had all the policies in his possession. In this he is sharply contradicted by other witnesses for the plaintiff. He undoubtedly took out the policy wherein he is named as beneficiary. As to the other policies there is a sharp conflict in the evidence. Assuming, however, the defendant's evidence is true, nevertheless, such facts do not change the terms of the policies or make the defendant Stanley Wilson the owner of any of them other than the one where he is made the beneficiary. As to that, the special benefit for blindness is made payable to plaintiff, and the amount of such special benefit on all the four policies was made payable to the plaintiff as the insured.

We are of the opinion the evidence shows that the plaintiff constituted the defendant Stanley Wilson his agent for the collection of these special benefits for blindness. The plaintiff was blind and helpless, and needed such assistance. He trusted the defendant Wilson to do this for him.

It is possible that in so far as the defendant Wilson advanced

any money to pay premiums to keep the policies alive he would be entitled to be reimbursed for the amount so advanced, and to retain from the insurance moneys received sufficient to reimburse himself for such advances.

The answer pleads no such advances by way of counterclaim; nevertheless, it would be but just and equitable to allow said defendant for such advances, if any, and charge him with any balance owing after deducting such advances. This brings the referee to a consideration of the evidence for the purpose of determining what credit, if any, should be given the defendant for advances made.

The referee is convinced that the fair preponderance of the evidence shows that none of the policies in question, saving the one where Stanley Wilson is named as beneficiary, were taken out or procured to be issued by him. The evidence shows that in 1928 the plaintiff and his wife went to the State of Michigan; that they paid the premiums on the three policies in the plaintiff's name as beneficiary up to the time of their leaving for Michigan, but were unable to pay after that; that the policies were sent to the agent of the insurance company in Buffalo, and in some way got into the possession of the defendant Stanley Wilson, and the defendant Wilson did pay some past due premiums and have them continued in force until the settlement was made on August 19, 1931.

It is difficult to determine from the testimony the exact amount of such payments of premiums, but they could not have exceeded three and a half years, and the premiums on said three policies for that time would have been $218.75.

The referee, with the consent of plaintiff's counsel, credits the defendant Stanley Wilson with that amount as against the $1,332.42 received by him on said policies for the plaintiff's disability, leaving a balance due and owing of $1,113.67, with interest, which sum we find the defendant Stanley Wilson has misappropriated and converted to his own use.

The plaintiff in his complaint charged that the defendant Anna Wilson, the wife of the defendant Stanley Wilson, was guilty with her husband of the misappropriation of said funds. The referee finds that the evidence in the case does not sustain the allegation and, therefore, dismisses the complaint as to her. The plaintiff in this action sought to establish a lien on certain real property for the amount of such misappropriation on the alleged ground that he had used said funds in improving said property, the title of which stands in the name of the defendant Anna Wilson, or Anna Bukowski. The evidence does not justify a finding to that effect.

By the terms of the policies in question, the policies on the

payment of the special benefit for blindness are to be deemed from that time on paid-up policies, requiring the payment of no further premiums. They accordingly are a valuable asset.

The policies being in the possession of the defendant Stanley Wilson, upon notice were produced by him on the trial of this action. The plaintiff asks the judgment decree that the three policies wherein he is named as beneficiary should be given to him. To this the defendant Stanley Wilson objects, mainly on the ground the action is one for the conversion of money. The issues, however, necessarily involve the ownership of the policies in question, and having determined that they belong to the plaintiff, the court ought not in justice to have the policies returned to Wilson.

The action partook of an equitable character, in that the plaintiff sought to charge certain real estate with the amount of the judgment rendered. He has failed in this, but his failure in this particular did not change the character of the action, and the referee is of the opinion that the court has power to do complete justice in this action without compelling the parties to resort to another and separate action. The decree or judgment to be entered herein will provide for the surrender and delivery to the plaintiff of the three policies wherein he is made beneficiary and for the return to Stanley Wilson of the fourth where he is named beneficiary.

Let findings be prepared and submitted in accordance with the views above expressed.

So ordered.